UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   SCOTT A. BUSHEY,                                   No. 7-15-10784 JA

Debtor.


**<u>MEMORANDUM OPINION</u>**

Creditors Roger Cronk, Nancy Cronk, Brandon Ashcraft, Amber Ashcraft and Blonde and Bitter, LLC (together, "Creditors") objected to Debtor Scott A. Bushey's claims of exemption under the New Mexico exemption statutes. *See* Amended Objection to Property Claimed as Exempt (Docket No. 40). Creditors assert that Debtor is not entitled to claim any exemptions under N.M.S.A. 1978 § 42-10-1 because he is not married and is not the head of the household, nor can he claim any exemptions under N.M.S.A. 1978 § 42-10-2 because he does not support himself. Creditors also objected to several of Debtor's specific claims of exemption under those exemption statutes, assuming, without admitting, they apply.

The Court held a trial on the merits of the Creditors' objection to Debtor's claims of exemption and took the matter under advisement.[1] For the reasons explained below, the Court concludes that, despite Debtor's financial dependence on his live-in girlfriend, the Debtor is entitled to claim exemptions under N.M.S.A. 1978 § 42-10-2. As for Creditors' particularized objections, Debtor has conceded that he is not entitled to claim certain items exempt. The Court

---

[1] Before the final, evidentiary hearing, Creditors filed a Motion for Partial Summary Judgment on Amended Objections to Exemptions ("Motion") (Docket No. 71). Debtor filed a response. *See* Debtor's Response to Motion for Partial Summary Judgment on Amended Objections to Exemptions ("Response") – Docket No. 72. Creditors filed a reply. *See* Reply to Bushey Response in Opposition to Motion for Partial Summary Judgment ("Response") – Docket No. 74.

will consider the Creditors' remaining particularized objections on a category by category basis, overruling some and sustaining others as explained below.

FACTS AND PROCEDURAL HISTORY

Scott A. Bushey filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 28, 2015. He claimed exemptions under New Mexico law. Schedule C includes the following claimed exemptions:

| Category/Description | New Mexico Statute | Claimed Exemption Amount |
|---|---|---|
| Real Property<br>Single Family residence at 4309 Prairie Loft Way | N.M.S.A. §§ 42-10-1, -2 | 39,996.00 |
| Cash on hand[2] | N.M.S.A. §§ 42-10-1, -2 | $300 |
| Checking/Savings, or Other Financial Accounts | N.M.S.A. §§ 42-10-1, -2 | $55.71 |
| Household goods and furnishings<br>TVs, Blue Ray players, stereo, speakers, work table, cabinets, 2 coffee tables, sofa, lounge chair, credenza, dining table & chairs, 2 buffets, 5 lamps, 3 beds, lounge chair, 3 dressers, kitchenware, tableware & Linens, small appliances, patio furniture, safe | N.M.S.A. §§ 42-10-1, -2 | $18,000 |
| Books, pictures and other Art Objects; Collectibles<br>Books, wall art | N.M.S.A. §§ 42-10-1, -2 | $200.00 |
| Furs and jewelry<br>Beaver fur, 27 pieces of silver jewelry | N.M.S.A. §§ 42-10-1, -2 | $1,800 |
| Firearms and Sports, Photographic and Other Hobby Equipment<br>AR 15, Walther pistol, Cannon camera, 2 bicycles, skis, boots ski gear | N.M.S.A. §§ 42-10-1, -2 | $1,000 |
| Annuities<br>New York Life Insurance | N.M.S.A. §§ 42-10-1, -2 | $22,970.00 |
| Interests in Partnerships or Joint Ventures | N.M.S.A. §§ 42-10-1, -2 | $.50 |

---

[2] The Debtor concedes that he is not entitled to an exemption for cash in any bank or held personally as of the petition date. *See* Stipulations of Debtor and Creditors for the Final Hearing on Creditors' Amended Objections to Exemptions, ¶ 5 (Docket No 79).

| Way of Life LLC | | |
| --- | --- | --- |
| Patents, Copyrights and other intellectual property<br>Trademark for Solaris brand | N.M.S.A. §§ 42-10-1, -2 | $1.00 |
| Licenses, Franchises, and other General Intangibles<br>74% owner of Solaris Franchise, LLC, (closed December 2013 | N.M.S.A. §§ 42-10-1, -2 | $1.00 |
| Automobiles, Trucks, Trailers, and Other Vehicles<br>2010 Ducati streetfighter motorcycle | N.M.S.A. §§ 42-10-1, -2 | $3,895.00 |

The AR 15 and Walther pistol have a combined appraised value of $500.[3] Sun Center or Alameda Assets, LLC ("Alameda Assets") paid the majority of the premiums for the New York Life Insurance policy (the "Life Insurance Policy").[4] The Life Insurance Policy is a universal policy that has a cash surrender value. *See* Exhibit A. The Debtor is the owner of the Life Insurance Policy. *See* Exhibit A, Exhibit 8, and Exhibit 9. The primary beneficiary under the Life Insurance Policy is Cecelia del Rosario De La Fuente Ramos. *See* Exhibit 8, p. 25. The secondary named beneficiary is Jacob Stewart Bushey, and the tertiary beneficiary is Lucas Robert Bushey, Debtor's sons. *Id.* Certain ledger entries from Alameda Assets describe the Life Insurance Policy as a "Key Man" policy. *See, e.g.,* Exhibit 8, pp. 46 - 47. Debtor took a loan from the Life Insurance Policy for the down payment to purchase the residence at 4308 Prairie Loft Way (the "Prairie Way Property"). Debtor purchased the Prairie Way Property in March of 2012. *See* Exhibit 7.

Debtor's Schedule I reflects that he works as a consultant for Alameda Assets earning monthly gross wages in the amount of $1,000. His scheduled net take-home pay is $901.

---

[3] *See* Motion, ¶10; Response, p.2.
[4] This fact is established solely for purposes of ruling on Creditors' objection to Debtor's claim of exemption and no other purpose.

3

Debtor also lists as income a "contribution by girlfriend to expenses" in the amount of $2,800 per month. Debtor's total combined monthly income on Schedule I is $3,701. Schedule J identifies a girlfriend as a dependent, and lists total monthly expenses of $3,755.39, leaving a monthly shortfall of $54.39. Debtor's Statement of Financial Affairs reports gross yearly income from Solarius Consulting for 2014 in the amount of $50,000, and gross yearly income for 2013 in the amount of $155,436 from wages, capital gains and self-employment.

Debtor lives with his girlfriend, Cecelia de la Fuente. They are not married. The Debtor has no dependents. Up until approximately January of 2015, Debtor earned substantially more money than Ms. De la Fuente earned, and he paid for the majority of the couple's household expenses. The couple's relative financial contributions to the household essentially reversed after that time. As of the petition date, Debtor contributes his monthly take home pay in the amount of $901 to help pay for the household expenses. Ms. De la Fuente's contribution of $2,800 per month pays for the majority of the household expenses.

## DISCUSSION

A. <u>Whether the Debtor is entitled to claim *any* exemptions under New Mexico law</u>

The "purpose of having exemptions is to permit a debtor to retain certain necessities . . . without fear of creditors taking them." *In re Warren,* 512 F.3d 1241, 1249 (10th Cir. 2008). Allowing a debtor to "'make full use of statutory exemptions is fundamental to bankruptcy law.'" *Id.* (quoting *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 877 (8th Cir. 1988) (Arnold, J. dissenting)). The Debtor claimed exemptions under New Mexico state law. *See* 11

4

U.S.C. § 522(b)(3) (providing that debtors may claim exemptions under state law).[5] The two New Mexico exemption statutes at issue are:

**Exemptions of married persons or heads of households**

Personal property in the amount of five hundred dollars ($500), tools of the trade in the amount of fifteen hundred dollars ($1,500), one motor vehicle in the amount of four thousand dollars ($4,000), jewelry in the amount of twenty-five hundred dollars ($2,500), clothing, furniture, books, medical-health equipment being used for the health of the person and not for his profession and any interest in or proceeds from a pension or retirement fund of every person supporting another person is exempt from receivers or trustees in bankruptcy or other insolvency proceedings, fines, attachment, execution or foreclosure by a judgment creditor. Property exempted shall be valued at the market value of used chattels.

N.M.S.A. 1978 § 42-10-1 (Cum. Supp. 2015).

**Exemptions of persons who support only themselves**

Personal property other than money in the amount of five hundred dollars ($500), tools of the trade in the amount of fifteen hundred dollars ($1,500), one motor vehicle in the amount of four thousand dollars ($4,000), jewelry in the amount of twenty-five hundred dollars ($2,500), clothing, furniture, books, medical-health equipment being used for the health of the person and not for his profession and any interest in or proceeds from a pension or retirement fund of every person supporting only himself is exempt from receivers or trustees in bankruptcy or other insolvency proceedings, executors or administrators in probate, fines, attachment, execution, or foreclosure by a judgment creditor. Property exempted shall be valued at the market value of used chattels.

N.M.S.A. 1978 § 42-10-2 (Cum. Supp. 2015).

Because the Debtor is not married and relies upon Ms. De La Fuente for support, Creditors assert that the Debtor cannot claim exemptions under N.M.S.A. 1978 § 42-10-1, entitled "Exemptions of married persons or heads of households." Similarly, because Ms. De La Fuente pays for the majority of the unmarried couple's household expenses, Creditors assert that

---

[5] The Bankruptcy Code permits individual debtors to elect either the exemptions available to them under applicable non-bankruptcy state or federal law or to elect the exemptions provided under 11 U.S.C. § 522(d) of the Bankruptcy Code, unless the applicable state law prohibits debtors from claiming exemptions provided under 11 U.S.C. § 522(d) (*i.e.,* the state has "opted out" of the exemption scheme under 11 U.S.C. § 522(d)). *In re Channon,* 424 B.R. 895, 899 and n.3 (Bankr.D.N.M. 2010). New Mexico has not opted out of the Bankruptcy Code's exemption scheme, and permits debtors to claim exemptions under either the New Mexico exemption statutes or 11 U.S.C. § 522(d).

5

the Debtor does not support himself and, consequently, cannot claim exemptions under N.M.S.A. 1978 § 42-10-2, entitled "Exemptions of persons who support only themselves."

The starting point for interpreting a statute's meaning is the language of the statute itself. *See Quynh Truong v. Allstate Ins. Co.,* 147 N.M. 583, 593, 227 P.3d 73, 83 (2010) ("'The first and most obvious guide to statutory interpretation is the wording of the statutes themselves.'") (quoting *Dewitt v. Rent-A-Center, Inc.,* 146 N.M. 453, 212 P.3d 341 (2009)); *Whitely v. N.M. State Pers. Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993) (stating that "[i]n addressing issues of statutory interpretation, we must determine and effectuate the intent of the legislature, . . . using the plain language of the statute as the primary indicator of legislative intent.") (internal citation omitted); *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985) (stating that "[t]he plain language of a statute is the primary indicator of legislative intent.") (citation omitted). "The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary." *Whitley,* 115 N.M. at 311 (citations omitted). *See also, State v. Boyse,* 303 P.3d 830, 832, 2013-NMSC-024, ¶9 (2013) (under the plain meaning approach to statutory construction, the court often consults the dictionary to ascertain a word's ordinary meaning) (citation omitted).

However, the language used in a statute's heading or title should not be relied upon to conclusively establish the meaning of the statute. *See Brotherhood of R.R. Trainmen v. Baltimore & O. R. Co.,* 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1647 (1947) (stating that "the title of a statute and the heading of a section cannot limit the plain meaning of the text.") (citations omitted). As the United States Supreme Court explained,

> [H]eadings and titles are not meant to take the place of the detailed provisions of the [statutory] text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated or prolific, headings and titles can do no more than indicate the provisions in a most general manner . . . . For interpretive purposes, [headings and

6

titles] are of use only when they shed light on some ambiguous word or phrase.  They are but tools available for the resolution of a doubt.  But they cannot undo or limit that which the text makes plain.

*Brotherhood v. Baltimore,* 331 U.S. at 528-29.

New Mexico law takes a similar approach.  Before resorting to the title of a statute to discern its meaning, the Court must find the language of the statute ambiguous and unclear.  *See Hewatt v. Clark,* 44 N.M. 453, 457, 103 P.2d 646, 649 (1940) ("We understand that resort may be had to the title of an act to determine the meaning of ambiguous language in the body of the act.  But first the language must be ambiguous and not clear. . . . the meaning of the act must primarily be determined from the language of the act itself.").  With these guidelines for statutory construction in mind, the Court will consider the two New Mexico exemption statutes at issue.

The language in § 42-10-1 states that the exemption applies to "every person supporting another person."  Its title is "Married persons or heads of households."  Section 42-10-2 uses the language, "every person supporting only himself," and, similar to the language in the statute itself, is titled, "Exemptions of persons who support only themselves."  Looking first to the language of the statute itself in an effort to discern legislative intent, the Court will consult the dictionary definition of the word "support" for its ordinary meaning.  One dictionary definition of "support" is "[t]o provide for or maintain, by supplying with money or necessities."  American Heritage Dictionary (2d College Ed., Houghton Mifflin Co. 1982).  Another definition of "support" is "to supply with the means of maintenance (as lodging, food or clothing)."  Webster's Third New International Dictionary (G & C. Merriam Co. 1981).

Using these ordinary, everyday, definitions of the word "support" to discern the meaning of the statutes, Debtor arguably does not support Ms. De La Fuente because his contribution to the household expenses is less than one-half of the couple's total household expenses for lodging, food, and clothing.  He does not fully "provide for or maintain by supplying" Ms. De La

7

Fuente with a complete "means of maintenance." Debtor would not, therefore, be entitled to claim exemptions under § 42-10-1 because he does not support another person. However, there is no language in either of the two statutes that requires full or complete support as a condition to being able to claim the exemption.

Often a debtor's income is insufficient to completely cover the expenses of daily necessities such as lodging, food, or clothing, regardless of whether the individual debtor is single, unmarried with dependents, or married. Given the total amount of the couple's monthly expenses, Debtor's contribution of $901 per month is clearly insufficient to fully support only himself. His contribution does, however, pay for a portion of his expenses for such necessities of lodging, food, and clothing.

When "interpreting a statute, a court not only looks to the plain meaning of the language employed, but also to the object of the legislation." *Dona Ana Sav. and Loan Ass'n, F.A. v. Dofflemeyer,* 115 N.M. 590, 592, 855 P.2d 1054, 1056 (1993) (citing *Miller v. New Mexico Dep't of Transp.,* 106 N.M. 253, 254, 741 P.2d 1374, 1375 (1987) (remaining citation omitted)). The Court's statutory interpretation "must be consistent with legislative intent" and its "construction must not render a statute's application absurd, unreasonable, or unjust." *Id.* at 592-93 (citing *City of Las Cruces v. Garcia,* 102 N.M. 25, 26-27, 690 P.2d 1019, 1020-21 (1984)). *See also, D'Avignon v. Graham,* 113 N.M. 129, 131, 823 P.2d 929, 931 (Ct.App. 1991) (stating that a formalistic and mechanistic approach to statutory interpretation has been rejected) (citations omitted).

The object of the New Mexico exemption statutes at issue is to effect humanitarian purposes. *See In re Foah,* 482 B.R. 918, 921 (10th Cir. BAP 2012) (in "considering the evident purposes of the statute, the Court notes that New Mexico courts have held that their exemption

8

Case 15-10784-j7    Doc 86    Filed 10/14/16    Entered 10/14/16 11:01:07 Page 8 of 20

statutes are to be interpreted to effect their humanitarian purposes") (internal quotation marks and citations omitted). "'The purpose of . . . exemptions in general is to benefit the **debtor** and the debtor's dependents.'" *Id.* at 932 (quoting *Ruybalid v. Segura,* 107 N.M. 660, 666, 763 P.2d 369, 375 (Ct.App. 1988) (emphasis added). A primary purpose of the exemption statutes is to "protect innocent dependents from the consequences of poor fiscal choices by the primary fiscal decisionmaker," *D'Avignon v. Graham,* 113 N.M. at 133. Section 42-10-1, applicable to "persons supporting another person" effectuates that purpose. Section 42-10-2 provides similar protection for individuals who do not have dependents.

It would be unjust and absurd to construe these two statutes together to mean that a single debtor with no dependents whose income is insufficient to fully support himself is precluded from claiming *any* exemption under either statute. The statutes include exemptions for basic things such as clothing, furniture, and a motor vehicle. Instead, the language in § 42-10-2, applicable to an individual person who supports only himself, is best construed to allow an individual who has insufficient funds to fully support himself to claim the exemptions provided under that section. This liberal construction of the exemption statute effectuates its intended purpose. *See In re Carlson,* 303 B.R. 478, 482 (10th Cir. BAP 2004) ("To effect their humanitarian purposes exemption laws must be liberally construed in favor of the claimant of an exemption.") (citations omitted).

Creditors' suggestion that a debtor must actively be seeking employment as a condition to claiming an exemption under § 42-10-2 finds no basis in the language of the statute. The plain language of the exemption statute does not impose such a condition. Courts are "not permitted to read into [a] statute language that is not there, especially when [the] statute makes sense as written." *Dofflemeyer,* 115 N.M. at 594, 855 P.2d at 1058 (citing *State ex rel. Barela v. Board of*

9

*Educ.,* 80 N.M. 220, 222, 453 P2d 583, 585 (1969)). Nor would the humanitarian purposes of the statute be furthered by such a condition.

In sum, all debtors, regardless of whether they are married, single, head of a household, supporting another person, supporting only themselves, or earning insufficient income to fully support themselves, are entitled to claim an exemption under either § 42-10-1 or § 42-10-2. *Cf. Jones v. Boyd,* 134 B.R. 431, 432 (D.N.M. 1991) (stating that "[a]ll bankruptcy debtors, single or married, are to be treated equally, *i.e.,* allowed the same set of exemptions," and concluding that joint debtors could "stack" their vehicle exemption in a single motor vehicle). The two exemption statutes at issue here essentially provide the same set of exemptions.[6] They must be read together so that every debtor falls under one or the other statute, but not both. Every debtor is then protected by the same types of exemptions for basic necessities.

The titles of the two statutes serve as a quick guide to distinguish between the two statutes that provide the same type of exemptions for individual debtors, even when the debtor's income is insufficient to cover all of the household expenses. They do not limit the meaning of the statutes. Rather, § 42-10-1, which applies to debtors who support others, includes married persons or heads of household, even if the individual married debtor stays at home and does not earn any income, and even if the individual single debtor who has a dependent earns insufficient income to pay for the household expenses. Section 42-1-2 applies to all other debtors, *i.e.,* debtors who are not married or heads of household who support only themselves, even if their income falls short of paying for all household expenses. Based on the foregoing, the Court

---

[6] The only difference in the language of the two statutes is that §42-10-1 provides for an exemption in "[p]ersonal property in the amount of five hundred dollars" whereas §42-10-2 further restricts that exemption to "[p]ersonal property **other than money** in the amount of five hundred dollars." N.M.S.A. 1978 §§ 42-10-1 and 42-10-2 (emphasis added).

concludes that the Debtor may claim exemptions under § 42-10-2 even though his income is insufficient to fully support himself.[7]

Creditors also suggest that the Debtor has voluntarily reduced his income in bad faith, and that such action is cause for the Court to deny Debtor his exemptions. This Court disagrees. Although state law "may provide that certain types of debtor misconduct warrant denial of the [state law] exemption" there is "no authority [under federal law] for bankruptcy courts to deny an exemption on a ground not specified in the [Bankruptcy] Code." *Law v. Siegel,* __ U.S. __, 134 S.Ct. 1188, 1197, 188 L.Ed.2d 146 (2014). The Bankruptcy Code does not confer any general, equitable power in the bankruptcy court to deny a debtor's exemptions based on bad-faith conduct. *Id.*

In *Albuquerque Nat'l Bank v. Zouhar (In re Zouhar),* 10 B.R. 154 (Bankr.D.N.M. 1981) the bankruptcy court denied the debtor's discharge based on the debtor's fraudulent conversion of non-exempt assets to exempt assets. Transmutation of non-exempt property to exempt property can also serve as grounds to deny the exemption under New Mexico law. *See In re Hamilton,* 461 B.R. 878, 888 (Bankr.D.N.M. 2011) ("A claim of exemption under New Mexico Law may be disallowed if transmutation of nonexempt property to exempt form would constitute a fraud on creditors.") (citing *Dofflemeyer,* 115 N.M. at 593). *See also Dofflemeyer,* 115 N.M. at 593 and 594 (observing that a debtor may not use the New Mexico exemption statutes to perpetuate a fraud on his or her creditors, and remanding the case for a determination of whether the debtor's "conversion of nonexempt funds, which were in imminent danger of attachment,

---

[7] Debtor's Schedule C cites §§ 42-10-1, -2, which Debtor's counsel represented to the Court is a function of the bankruptcy software program he used to prepare the Debtor's schedules. Based on the Court's ruling, only § 42-10-2 applies.

11

was done with the intent to defraud" the creditor).  Taking otherwise non-exempt assets and turning them into exempt assets with the intent to defraud creditors is not the issue here.

Debtor has not converted non-exempt assets to exempt assets, but has, according to Creditors, voluntarily taken a drastic pay cut shortly before filing his bankruptcy case.  Future, post-petition wages and salary, even at a high level, do not constitute property of the Chapter 7 bankruptcy estate.  *See* 11 U.S.C. § 541(a)(6) (excluding from property of the estate "earnings from services performed by an individual debtor after the commencement of the case."); *In re Christie,* 233 B.R. 110, 113 (10th Cir. BAP 1999) (confirming that "a chapter 7 debtor's postpetition earnings clearly are not property of the estate").  Had Debtor maintained his income at the levels reported in his Statement of Financial Affairs for 2014 and 2015, he nevertheless would have been able to claim exemptions under § 42-10-2, which, for the most part, provides modest fixed exemption amounts.  The Court finds no support in the case law that would warrant a denial of Debtors' right to claim exemptions under § 42-10-2 based on his alleged bad faith voluntary pay cut.

> B.   Whether any of Creditors' specific objections to Debtor's claimed exemptions should be sustained

Creditors also object to several of Debtor's specifically claimed exemptions.  The objecting party bears the burden of proving, by a preponderance of the evidence, that the debtor's claimed exemption is improper.  *In re Hodes,* 402 F.3d 1005, 1010 (10th Cir. 2005) (citations omitted).

Debtor concedes that he is not entitled to exempt the following items: 1) cash on hand as of the petition date (reported as $300 on Schedule C); 2) trademark for Solarius brand (listed in Schedule C as "Solaris"); 3) any interest in Solarius Franchise, LLC (listed in Schedule C as "Solaris Franchise LLC"); 4) any interest in Way of Life LLC; and 5) any interest in Way of

12

Light LLC. *See* Stipulations of Debtor and Creditors for Final Hearing on Creditor's Amended Objections to Exemptions (Docket No. 79). Debtor also agrees that he is not entitled to exempt any claim he may have against the Vaughan Company, Realtors ("VCR"), in Case No. 10-10759-j11. *Id.* Debtor did not schedule any claim against VCR. These claims of exemption will be denied. The Court will address the remaining objections to Debtor's claimed exemptions by type.

*Life Insurance Policy*

Debtor claimed an exemption in the Life Insurance Policy under N.M.S.A. 1978 § 42-10-3, which provides, in relevant part:

> The cash surrender value of any life insurance policy, the withdrawal value of any optional settlement, annuity contract or deposit with any life insurance company . . . issued upon the life of a citizen or resident of the state of New Mexico, or made by any such insurance company with such citizen, upon whatever form and whether the insured or the person protected thereby has the right to change the beneficiary therein or not, shall in no case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or who is protected by said contract . . . nor shall it be subject in any other manner to the debts of the person whose life is so insured . . .
>
> N.M.S.A. 1978 § 42-10-3.

The Life Insurance Policy falls squarely within the parameters of the New Mexico exemption statute. The Life Insurance Policy was issued upon the life of the Debtor, who is "a citizen or resident of the state of New Mexico." The "statute clearly exempts the cash surrender value and any payments on a life insurance policy from creditor claims against either the insured or the beneficiary whenever the insured is a citizen or resident of New Mexico." *Foah,* 482 B.R. at 920. To the extent the Debtor has an interest in the cash surrender value of the Life Insurance Policy, he can claim an exemption in it. A policy owner is entitled to the cash surrender value of the policy. *See* 5 *Couch on Insurance* § 80:50, n.1 (3d Ed. 2016) ("Generally a policy owner is entitled to the lifetime benefits payable under the life insurance policy . . . . includ[ing] the right

13

to receive the cash surrender value . . . ") (quoting *Evans v. Moore,* 853 So.2d 850 (Miss.Ct.App. 2003)). *See also, In re Michaels,* 282 B.R. 234, 239-40 (10th Cir. BAP 2002) (observing that debtors, as owners of life insurance policies insuring their own lives, could surrender those policies for their cash value), *rev'd on other grounds by In re Vigil,* 74 Fed.Appx. 19 (10th Cir. 2003) (holding that debtor could exempt cash surrender value of life insurance policy under Wyoming law, unless and until the debtor changes the beneficiary of the policy for his personal advantage).

Creditors contest whether Debtor owns the Life Insurance Policy, based on the parties' stipulation that Sun Center America and Alameda Assets paid the majority of the premiums for the Life Insurance Policy, and based on evidence that Alameda Assets characterized the Life Insurance Policy as a "key man" policy. Payment of a policy's premiums by a party other than the owner does not effectuate a change in ownership of the policy. *Cf. Estate of Leder v. Comm'r of Internal Revenue,* 893 F.2d 237, 241 (10th Cir. 1989) (interpreting sections of the tax code regarding incidents of ownership of an insurance policy, and concluding that "payment of the policy premiums by the decedent's wholly owned corporation does not render the policy proceeds includable in decedent's gross estate, because payment of premiums is not an incident of ownership"). The only evidence of ownership currently before the Court establishes that the Debtor is the owner of the policy. *See* Exhibit A, Exhibit 8, and Exhibit 9. Creditors have failed to meet their burden of proving that the Debtor is not entitled to claim an exemption in the cash surrender value of the life insurance policy. The Court, therefore, overrules Creditors' objection to Debtor's claim of exemption in the Life Insurance Policy. Debtor's claim of exemption in the cash surrender value of the Life Insurance Policy under N.M.S.A. 1978 § 42-10-3 will be allowed.

14

*Homestead*

Debtor claimed an exemption in the Prairie Way Property under the New Mexico homestead exemption statute, which provides:

> Each person shall have exempt a homestead in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of sixty thousand dollars ($60,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate. If the homestead is owned jointly by two persons, each joint owner is entitled to an exemption of sixty thousand dollars ($60,000).

N.M.S.A. 1978 § 42-10-9 (Cum. Supp. 2015).

Debtor meets the criteria under the New Mexico homestead statute. He occupies and owns the Prairie Way Property, subject to the mortgage. The total amount of his claimed exemption in the Prairie Way Property in the amount of $38,996.00 is less than the maximum $60,000 allowed under the statute.

Creditors assert that Debtor is not entitled to claim a homestead exemption by operation of 11 U.S.C. § 522(o). Section 522(o) limits a debtor's right to claim a homestead exemption under certain circumstances. It provides, in relevant part:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
>
>     (4) real . . . property that the debtor . . . claims as a homestead;
>
> shall be reduced to the extent such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o)(4).

"Section 522(o)(4) is a limitation on exempt homestead interests to the extent of any value of the homestead attributable to fraudulent conversion of nonexempt assets within ten years before filing." *In re Agnew,* 355 B.R. 276, 280 (Bankr.D.Kan. 2006). Creditors complain that because

15

Debtor borrowed against the cash surrender value of the Life Insurance Policy to make the down payment on his residence in which he now claims a homestead exemption, he is not entitled to claim a homestead exemption.

Section 522(o) does not limit Debtor's claimed homestead exemption for two reasons. First, the Court has already determined that the Debtor may exempt the cash surrender value of the Life Insurance Policy. Because he can exempt the cash surrender value of the Life Insurance Policy, 11 U.S.C. § 522(o) is inapplicable. Debtor used exempt property, *i.e.,* a portion of the cash surrender value of the Life Insurance Policy, to acquire other exempt property, *i.e.,* the Prairie Way Property in which he claims a homestead exemption.

Second, even if the cash surrender value of the Life Insurance Policy constituted a nonexempt asset, there is insufficient evidence that the Debtor used a portion of the cash surrender value to purchase the Prairie Way Property with the intent to hinder, delay, or defraud creditors. Creditors bear the burden of proving Debtor's actual fraudulent intent under 11 U.S.C. § 522(o). *See Agnew,* 355 B.R. at 283-84 (finding that the objecting party "has the burden to establish actual intent to defraud" under §522(o)(4), and that the phrase "hinder, delay or defraud a creditor" used in § 522(o)(4) should be given the same meaning as applied to § 727(a)(2)(A) and § 548(a)(1)). A debtor's actual fraudulent intent may be inferred based on the surrounding facts and circumstances indicating fraud. *See Marine Midland Bus. Loans, Inc. v. Carey (In re Carey),* 938 F.2d 1073, 1077 (10th Cir. 1991) ("To infer fraudulent intent, courts look for specific indicia of fraud."); *Quicken Loans, Inc. v. Splawn (In re Splawn),* 376 B.R. 747, 755 (Bankr.D.N.M. 2007) ("Intent to hinder, delay, or defraud . . . may be shown through circumstantial evidence from which the court may infer actual intent to hinder, delay or defraud creditors) (citations omitted). Creditors have failed to establish that the Debtor acquired the

16

Prairie Way Property with the intent to hinder, delay, or defraud creditors. Creditors have filed an adversary proceeding against the Debtor seeking to deny the Debtor's discharge based, in part, on a series of transactions in the fall of 2013 and the fall of 2014. *See* Adversary Proceeding No. 15-1066. Debtor purchased the Prairie Way Property well before the transactions in the fall of 2013 and the fall of 2014 that Creditors claim were fraudulent. Creditors presented no other circumstantial evidence surrounding Debtor's acquisition of the Prairie Way Property from which the Court can infer fraudulent intent. Creditors' objection to Debtor's homestead exemption is overruled. Debtor's homestead exemption under N.M.S.A. 1978 § 42-10-9 will be allowed.

*Other personal property*

Debtor has claimed an exemption under § 42-10-2 in the following electronic equipment: televisions, Blue Ray players, stereo, and speakers. The property for which a debtor may claim an exemption under § 42-10-2 includes "furniture." Creditors assert that electronic equipment used in the Debtor's home does not constitute "furniture." Once again, the Court will turn to the dictionary definition of the word, "furniture" to discern its meaning. "Furniture" is defined as "[t]he moveable articles in a room or establishment that make it fit for use." American Heritage Dictionary. Similarly, Webster's Third New International Dictionary defines "furniture" to include "articles of convenience or decoration used to furnish living quarters . . . as distinguished from such permanent installations as bathroom fixtures." Televisions, Blue Ray players, stereos and speakers fall within such definitions of "furniture." Such items are moveable, used to furnish a person's home, and make the home "fit for use." Televisions, stereos and DVD players and the like are common, everyday, furnishings ordinarily found in American homes. The Court will allow Debtor's claimed exemption in the televisions, Blue Ray players, stereo,

17

and speakers. *Cf. In re Vest,* 18 B.R. 241 (Bankr.D.N.M. 1982) (allowing debtor to amend his exemptions to claim an exemption under §42-10-1 in a color television set and video tape recording set).

Creditors also object to Debtor's claimed exemption in "wall art."[8] "Wall art" ordinarily falls within the category of "furniture" because it, too, is moveable and used as decoration to furnish a home. *Cf. In re Lucas,* 62 B.R. 949, 952 (Bankr.S.C.Cal. 1986) (finding that oil paintings were exempt "household furnishings" under California exemption statute), *aff'd, in part, and rev'd in part on other grounds by In re Lucas,* 77 B.R. 242 (9th Cir. BAP 1987). No evidence was presented to suggest that the "wall art" is used for anything other than the Debtor's personal use in furnishing his home. *Cf. First Bank of Catoosa v. Reid (In re Reid),* 757 F.2d 230, 235 (10th Cir. 1985) (concluding that debtor could not avoid a lien against religious paintings as impairing the debtor's exemption under Oklahoma law because the paintings "were primarily used for business rather than personal, family or household purposes"). Nor was evidence presented that the wall art has a sufficiently high value that it would no longer fall within the category of "furniture." Debtor's claimed exemption in "wall art" under N.M.S.A. 1978 § 42-10-2 will be allowed.

Creditors object to Debtor's claimed exemption in the amount of $1,800 in a beaver fur and twenty-seven pieces of silver jewelry, because the Debtor guessed at the value. The exemption for jewelry under N.M.S.A. 1978 § 42-10-2 is limited to $2,500. The New Mexico statute does not place a capped value on clothing. *Id.*[9] Creditors, who bear the burden of proof

---

[8] Debtor listed "wall art" together with "books" and claimed a total exemption in the amount of $200.00 for both items. Section 42-10-2 does not place a dollar limit on the exemption for "books." N.M.S.A. 1978 § 42-10-2. Though the value of the Debtor's claimed exemption in "wall art" does not bear on the Court's determination of whether such personal property is exempt under the category of "furniture," the Court notes that the total value of the "wall art" (which necessarily must be less than $200.00) is minimal.
[9] Even though the New Mexico statute does not place a dollar limit on clothing, the exemption may not truly be "unlimited." *Cf. In re Lebovitz,* 360 B.R. 612 (6th Cir. BAP 2007) (construing Tennessee statute that does not have a

18

on the impropriety of the Debtor's claimed exemptions,[10] did not offer any evidence to refute the value Debtor placed on these items. The Debtor's claimed exemption in the beaver fur and silver jewelry will be allowed.

Finally, Creditors object to the Debtor's claimed exemption in "sports, photographic, and hobby equipment" identified as a "Canon camera, 2 bicycles, skis, boots, ski gear." Section 42-10-2 does not provide for an exemption in photographic equipment or sports equipment. Nor does such equipment fall into the general category of "clothing." Nor has Debtor claimed that these items constitute "tools of trade." To claim an exemption in these items, Debtor would need to rely on the general personal property exemption in the amount of $500. *See* N.M.S.A. 1978 § 42-10-2 ("Personal property other than money in the amount of five hundred dollars"). But the Walter pistol and AR 15, together valued at $500, have exhausted this exemption. The Court will, therefore, disallow Debtor's claimed exemption in the two bicycles, Canon camera, skis, boots, and ski gear.

## CONCLUSION

Debtor is entitled to claim exemptions under N.M.S.A. 1978 § 42-10-2 of the New Mexico exemption statutes, regardless of his inability to earn sufficient income to support himself fully. Debtor is also entitled to claim a homestead exemption in the Prairie Way Property. His interest in the cash surrender value of the Life Insurance Policy is exempt under N.M.S.A. 1978 § 42-10-3. Debtor's claimed exemption in the AR 15 and Walther pistol is allowed under the $500 personal property exemption under N.M.S.A. 1978 § 42-10-2. Debtor's

---

dollar limit, but instead, provides an exemption for "'necessary and proper wearing apparel for the actual use of debtor and family'"). The Court need not decide this issue. The Debtor placed a combined value on the jewelry and the beaver fur of $1,800.

[10] *See* Fed.R.Bankr.P. 4004(c) ("the objecting party has the burden of proving that the exemptions are not properly claimed.").

19

claimed exemptions in the televisions, stereo, speakers, Blue Ray players, and wall art are allowed under N.M.S.A. 1978 §42-10-2 under the category "furniture." Per the Debtor's stipulation, Debtor does not claim an exemption in any claim he may have against VCR, and his claimed exemptions in cash, "Solaris Franchise, LLC," "Solaris" brand, Way of Life, LLC, Way of Light, LLC. Those claimed exemptions are disallowed. Finally, Debtor's claimed exemption under N.M.S.A. 1978 § 42-10-2 in a Canon camera, two bicycles, skis, boots, and ski gear will be disallowed. Such items do not fall within the category of "furniture" or "clothing," and the $500 personal property exemption has already been applied to Debtor's AR 15 and Walther pistol. The Court will enter a separate order consistent with this Memorandum Opinion.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: October 14, 2016

COPY TO:

Daniel J Behles
Moore, Bassan & Behles P.C.
Attorney for Debtor
3800 Osuna Rd NE, STE #2
Albuquerque, NM 87109

James Bartholomew Boone
Chappell Law Firm, P.A.
Attorney for Creditors
6001 Indian School Road NE, Suite 150
Albuquerque, NM 87110